IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO: 3:06-CR-0256-WKW |
| | ) | |
| RAMON CONTRERAS-RODRIGUEZ | ) | |

## RESPONSE TO MOTION TO SUPPRESS

    **COMES NOW** the United States of America, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and files the instant response to Defendant's

("Contreras'") Motion to Suppress (Doc. #23), filed on December 5, 2006, as follows:

### FACTS

    1. On October 12, 2006, agents with the Bureau of Immigrations and Customs Enforcement

("ICE"), the Alabama Bureau of Investigation ("ABI"), and the Tallapoosa County Sheriff's Office

("TCSO"), executed a federal search warrant, issued by this Court on October 10, 2006, at 1468

Hicks Store Road, Tallapoosa County, Alabama. See Exh. 1 (Application for Search Warrant,

attached); Exh. 2 (Address/Compound Breakdown and Description, attached); Exh. 3 (Attachment

A, Items to be Seized, attached); Exh. 4 (Affidavit in Support of Search Warrant, attached); and,

Exhibit 5 (Search Warrant, attached).  The purpose of the search was to locate evidence related to the

possible harboring of illegal aliens by Octavio Trejo Patino ("Patino") and Ronda Baird ("Baird").

Exh. 3, 4.  During the course of the search, agents searched 201 Trejo Trail, a residence specifically

identified in the search warrant application.  Exh. 2.  During the course of executing the search

warrant, agents later identified this residence as belonging to Contreras and a female by the name of

Nadia Torres ("Torres").  See Exhibit 6 (Criminal Complaint, attached); and, Exhibit 7 (Affidavit in

support of Criminal Complaint, attached).  During the search of this residence, agents seized, among other things, three firearms and documentation appearing to belong to Contreras and Torres.  Id. Ultimately, it was determined that Contreras and Torres were illegally in the United States and that the firearms had traveled in interstate commerce, providing the basis for the criminal complaint filed against them.  Id.

## ISSUES

5.  As best as the United States can discern, Contreras claims:

a.  the search warrant "fails to show probable cause for the search [because there is no] reason to believe that the specific residence in question contained contraband or fruits or instrumentalities of a crime (Doc. #23, at 1);"

b.  there "is nothing [in the affidavit] to suggest that Defendant was harboring or employing illegal aliens (Doc. #23, at 2); and,

c.  that, even if the agent in this case acted in good faith pursuant to United States v. Leon, 468 U.S. 897, 926 (1984), "the agent objectively knew he had no 'facts' on which to base probable cause for a search."  (Doc. #23, at 2-3).

## ARGUMENT

6.  Contreras' claims are without merit.

7.  A search warrant should be issued by a "neutral and detached magistrate" judge, who must assess whether the police have probable cause to conduct a search and seize evidence related to a crime.  Johnson v. United States, 333 U.S. 10 (1946); Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972); Warden v. Hayden, 387 U.S. 294 (1967).  A magistrate judge's decision to issue a search warrant must be reviewed with great deference.  Ornelas v. United States, 517 U.S. 690, 696 (1996);

2

see also, United States v. Trainor, 376 F.3d 1325, 1335 (11th Cir. 2004); citing, Illinois v. Gates, 462 U.S. 213, 236 (1983), and United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994).

8.  In the instant matter, a neutral and detached magistrate judge from this district reviewed the application, affidavit, and other supporting documentation and determined that probable cause existed to issue the warrant.  See Exh. 5.

9.  Lack of Probable Cause.  Contrary to Contreras' first claim, the affidavit sufficiently established probable cause that the residence in question contained the evidence of the crime described therein.  ICE Special Agent Jonathan Harrison went into great detail describing the makeup of property known as 1468 Hicks Store Road, Tallassee, Alabama ("the compound").  Agent Harrison states in his affidavit that not only did Patino admit to owning the compound, both Patino and Baird are mortgagors of and are assessed taxes on this property.  See Exh. 4.  Bank records indicated that Patino and Baird's company, Rapid Drywall Subcontractors, paid an individual named "Nadia Torres" over $6,400 by check.  Id.  In cashing the checks, Torres utilized a Resident Alien Registration number ("015-871-006") which did not belong to her.  Id.  In August of 2006, ABI Corporal Scott Donovan asked Patino if the compound's inhabitants were in the country legally, and Patino replied that they were.  Id.  Later that month, Corporal Donovan and TCSO Investigator Fred White spoke with the compound's residents.  Id.  In Patino's presence several inhabitants admitted to being in the United States illegally.  Id.  Patino then admitted to earlier lying about the legal status of the inhabitants, stating he was waiting for the passage of a pending bill which would grant the residents, who were also workers for him, some sort of amnesty.  Id.  Agent Harrison then avers that, based on his training and experience, a number of types of contraband is typically found during harboring operations such as this, to include identification documents.  Id.  Agent Harrison

3

ultimately requests authorization to search for and seize the listed contraband. Id., and Exh. 3.

10. No Evidence Contreras Was Harboring Aliens. The United States does not dispute the fact that there is no evidence of Contreras harboring aliens. Contreras is not charged with, or being investigated for, harboring aliens; rather, he is an illegal alien who, the Government alleges, was being harbored by Patino and Baird. Exh. 2-4. It was during the search of the compound in an effort to seize evidence of Patino's and Baird's activities that evidence of Contreras' firearms possession was uncovered. Exh. 7.

11. Agent Harrison Did Not Act in Good Faith. Without alleging any specifics, Contreras makes the baseless claim that Agent Harrison "knew he had no 'facts' on which to base probable cause for a search." (Doc. #23, at 3). This statement is contrary to the facts set forth in the thirteen-page affidavit submitted by Agent Harrison wherein he details his investigation, including an admission by Patino that he knowingly hired a number of illegal aliens, one of which was Torres, anticipating a change in the law that would grant the illegal aliens amnesty, and allowed them to reside on his property. Exh. 3. Agent Harrison, at a minimum, possessed the requisite good faith to believe that evidence of alien harboring would be found on Patino's and Baird's compound. Leon, supra; cf. Franks v. Delaware, 438 U.S. 154 (1978) (where defendant makes substantial preliminary showing that affiant knowingly and intentionally included false statement in affidavit, and false statement material to probable cause finding, Constitution requires hearing be held).

## NECESSITY FOR EVIDENTARY HEARING

12. Because Contreras fails to "allege specific facts which, if proven, would provide a basis for relief [, the United States respectfully requests this Court] summarily dismiss [Contreras'] suppression motion[, as it is] supported only by general conclusory assertions founded on mere

suspicion or conjecture." <u>Order on Arraignment</u> (Doc. #22); <u>See also</u>, <u>United States v. Richardson</u>, 764 F.2d 1514, 1527 (11th Cir. 1985) (court has discretion in determining need for suppression hearing); <u>United States v. Cooper</u>, 203 F.3d 1279, 1285 (11th Cir. 2000) (court did not abuse discretion in denying appellant suppression hearing where motion to suppress was wholly lacking in sufficient factual allegations). The United States respectfully requests this Court rule based upon the motions and exhibits submitted by the parties.

13. Accordingly, as Contreras' claims are without merit, the United States respectfully requests this Court to deny his motion.

Respectfully submitted this 13th day of December, 2006.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Todd A. Brown
TODD A. BROWN
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
ASB-1901-O64T
Todd.Brown@usdoj.gov

5

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )    CR. NO: 3:06-CR-0256-WKW |
| | ) |
| RAMON CONTRERAS-RODRIGUEZ | ) |

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on December 13, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jay Lewis, Esq.

                Respectfully submitted,

                LEURA G. CANARY
                UNITED STATES ATTORNEY

                /s/ Todd A. Brown
                TODD A. BROWN
                Assistant United States Attorney
                Post Office Box 197
                Montgomery, Alabama 36101-0197
                (334) 223-7280
                (334) 223-7135 fax
                ASB-1901-O64T
                Todd.Brown@usdoj.gov

# United States District Court

_____ **MIDDLE** _____ **DISTRICT OF** _____ **ALABAMA** _____

| | |
|---|---|
| **In the matter of the Search of** | **APPLICATION AND AFFIDAVIT** |
| (Name, address or brief description of person, property | **FOR SEARCH WARRANT** |
| or premises to be searched) | |

**CASE NUMBER:** 2:06mj 115-VPM

**1468 Hicks Store Road, Tallassee, AL**
*See Attached Address/Compound Breakdown and*
*Description*

I ____ Jonathan Harrison _____ being duly sworn depose and say:

I am a(n) ___ Immigration & Customs Enforcement  Special Agent _____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**1468 Hicks Store Road, Tallassee, AL**
*See Attached Address/Compound Breakdown and Description*

in the _____ Middle _____ District of _____ Alabama _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
concerning a

violation of Title __ 8 ___ United States Code, Section(s) 1324.

The facts to support the issuance of a Search Warrant are as follows:

**See Attached Affidavit Which is Incorporated by Reference Herein**

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

October 10, 2006                                    at    Montgomery, Alabama
_____          _____
Date                                                            City and State

Vanzetta P. McPherson, U.S. Magistrate Judge          _____
_____                              Signature of Judicial Officer
Name and Title of Judicial Officer



*ADDRESS/COMPOUND BREAKDOWN AND DESCRIPTION*

1468 Hicks Store Road, Tallassee, Alabama located off Macedonia Road, Tallapoosa County in the State of Alabama, consisting of six residential houses, one of which is divided into apartments:

●132 Trejo Trail, Tallassee, Alabama: The main residence is a two story residential property constructed of red brick with a green metal roof and is located south of Hicks Store Road. Trejo Trail, a private road, is the main road that enters the property located at 1468 Hicks Store Road and separates the main residence from 141, 159 and 171 Trejo Trail.

●141 Trejo Trail, Tallassee, Alabama, is a building constructed of light grey vinyl siding and a blue metal roof and is located to the east of the main residence. This building is known as "the playhouse" and is the first building on the left as one travels southbound on Trejo Trail from Hicks Store Road.

●159 Trejo Trail, Tallassee, Alabama, is constructed of light yellow vinyl siding and a blue metal roof. This building is known as "the poolroom" and is the second building on the left as one travels southbound on Trejo Trail from Hicks Store Road.

●171 Trejo Trail, Tallassee, Alabama, is a two-story residence constructed of light grey vinyl siding and blue metal roof. The residence is located to the south of 141 and 159 Trejo Trail and is the third building on the left as one travels southbound on Trejo Trail from Hicks Store Road.

●154 Trejo Trail, Tallassee, Alabama, is a one-story residence constructed of light green and light yellow vinyl siding and a blue metal roof. The residence is located directly behind, south of, the main residence.



GOVERNMENT
EXHIBIT
2

● The apartment building located to the southwest of the main residence is described as a combination one and two-story building. The one-story, constructed of light yellow vinyl siding and a blue metal roof, and two-story apartment building, constructed of light grey vinyl siding and a blue metal roof, contain three residences and is fed power by three meters. However, all information identifies the building as having only two addresses, 164 & 168 Trejo Trail, Tallassee, Alabama. The one-story residence is attached to the north side of the building with an east facing attached garage constructed of off white wood siding.

● 201 Trejo Trail, Tallassee, Alabama, is a mobile home with off- white vinyl siding and a silver metal roof. This trailer is located to the southeast of the main residence and south of 141, 159 aud 171 Trejo Trail.

● 172 Trejo Trail, Tallassee, Alabama, is a large, charcoal colored, metal- sided building with a blue metal roof. This building, known as "the shop" is located southwest of the main house and is split-level, with an office inside.

## ATTACHMENT A

a. Many of the known acts and instances described in this affidavit required cash purchases and/or expenditures as well as payments from checking accounts. Such activities often create a trail of documentation which may include, but is not limited to: identification, photographs, checks, copies of wire transfers, deposit slips, vehicle and/or trailer titles, email messages in printed form, purchase agreements, receipts for gas, motel/hotel receipts, airline tickets, bank account ledgers, checking account records, utility bills, telephone numbers, telephone numbers of associates, telephone numbers of legitimate businesses such as travel agencies and investment brokers, and documents identifying additional co-conspirators involved in the bringing in, harboring and employing of illegal aliens.

b. Documents are usually maintained for personal reference purposes to facilitate communication between associates and co-conspirators, to document expenses for reimbursement, as mementos and for reference by others should one or more parties be arrested or taken into custody. Documents are not only stored in hard copy form, due to the fact that a majority of documents are stored electronically such as on a personal computer and/or hand held electronic device such as "palm pilots". Computers are utilized to allow access to vital information of an organization and allow the organization to operate efficiently and effectively. Businesses utilize computers to track revenues and expenses associated with the company and allow the owners to print checks to employees more efficiently and effectively, especially with a large workforce.

c. The items and documents described above are usually maintained by those engaged in harboring and employing illegal aliens just as law abiding businesses and citizens do, in a location where they are readily accessible, most often in a residence, or on properties which the persons engaged in their business activities, feel safe because they or their family members and/or very close associates maintain and control the property.

During my career with ICE, searches of residences, associated with harboring and employing illegal aliens, have yielded documents as described above, papers and/or notes, photographs, personal computers and/or hand held computers utilized to facilitate the employment of illegal aliens, address books, telephone numbers, receipts and the like which


GOVERNMENT EXHIBIT 3

have spanned several years prior to the search; particularly when the occupants of the residence or property has resided at the location for a period of time. Those persons who are engaged in a legitimate lifestyle, accumulate said items in their everyday lives and maintain those items in areas where they have control for safekeeping and ready access.

## AFFIDAVIT

I, Jonathan E. Harrison, being duly sworn, hereby depose and state the following:

I am a Special Agent employed by the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE) and have been so employed since its inception in March 2003. Prior to March 2003, I was a Special Agent for the Department of Treasury, United States Customs Service for approximately two (2) years. My duties include the investigation of the proceeds of illegal activities, specifically money laundering violations of Title 18 United States Code 1956 and 1957 as well as violations of Title 8, the Immigration and Nationality Act. The following information has been obtained by me personally or has been provided to me by agents and investigators of ICE and other law enforcement agencies, specifically, Corporal Scott Donovan of the Alabama Bureau of Investigations (ABI) and Investigator Fred White of the Tallapoosa County Sheriff's Office.

This affidavit supports an application for a search warrant for all property, structures, outbuildings, and vehicles located on the property described as 1468 Hicks Store Road, Tallassee, Alabama owned and occupied by Octavio Trejo PATINO and Ronda BAIRD, and an application for a seizure warrant for all monies and other things of value contained in the following accounts at Compass Bank, 701 South 32nd Street, Birmingham, Alabama 35233, for which probable cause exists that such monies are subject to seizure and forfeiture to the United States pursuant to Title 8 U.S.C. § 1324(b) and Title 18 U.S.C. § 981, on the grounds that they constitute the gross proceeds of a violation of Title 8 U.S.C. § 1324 or on the grounds that they contain property traceable to such gross proceeds or property involved in, or traceable to, revenue generated by the employment and harboring of illegal aliens:

a.   Account 22141694 in the name of Ronda S. BAIRD, 1468 Hicks Store Road, Tallassee, Alabama 36078;

b.   Account 87330605 in the name of RAPID DRYWALL SUBCONTRACTORS, INC, 1468 Hicks Store Road, Tallassee, Alabama 36078;

c.   Account 26555744 in the name of Octavio Trejo PATINO and Ronda BAIRD, 1468 Hicks Store Road, Tallassee, Alabama 36078;

d.   Account 16107166 in the name of Octavio Trejo Patino, Jr., Ronda BAIRD Custodian, 1468 Hicks Store Road, Tallassee, Alabama 36078;


GOVERNMENT EXHIBIT
4

e.    Account 16107174 in the name of Chre' Shawntae Houston, Ronda BAIRD
Custodian, 1468 Hicks Store Road, Tallassee, Alabama 36078 and/or 132 Trejo
Trail, Tallassee, Alabama 36078;

f.    Account 28071124 in the name of Barbara S. Haynes and Ronda BAIRD, 408
New Moon Road, Prattville, Alabama 36067.

1468 Hicks Store Road, Tallassee, Alabama is located off Macedonia Road in the
county of Tallapoosa in the State of Alabama. The property consists of six residential
houses, one of which is divided into apartments. The main residence is a two story
residential property constructed of red brick with a green metal roof and is located south
of Hicks Store Road. The main entrance of the residence is in the southwest corner of the
residence. Due to numerous residences located on the property, the residences have
different numerical and street addresses other than 1468 Hicks Store Road. The main
residence address is 132 Trejo Trail, Tallassee, Alabama. Trejo Trail, a private road, is the
main road that enters the property located at 1468 Hicks Store Road and separates the
main residence from 141, 159 and 171 Trejo Trail.

141 Trejo Trail, Tallassee, Alabama, is a building constructed of light grey vinyl
siding and a blue metal roof and is located to the east of the main residence. This building
is known as "the playhouse" and is the first building on the left as one travels southbound
on Trejo Trail from Hicks Store Road.

159 Trejo Trail, Tallassee, Alabama, is constructed of light yellow vinyl siding and a
blue metal roof. This building is known as "the poolroom" and is the second building on
the left as one travels southbound on Trejo Trail from Hicks Store Road.

171 Trejo Trail, Tallassee, Alabama, is a two-story residence constructed of light
grey vinyl siding and blue metal roof. The residence is located to the south of 141 and 159
Trejo Trail and is the third building on the left as one travels southbound on Trejo Trail
from Hicks Store Road.

154 Trejo Trail, Tallassee, Alabama, is a one-story residence constructed of light
green and light yellow vinyl siding and a blue metal roof. The residence is located directly
behind, south of, the main residence.

The apartment building located to the southwest of the main residence is described as a combination one and two-story building. The one-story, constructed of light yellow vinyl siding and a blue metal roof, and two-story apartment building, constructed of light grey vinyl siding and a blue metal roof, contain three residences and is fed power by three meters. However, all information identifies the building as having only two addresses, 164 & 168 Trejo Trail, Tallassee, Alabama. The one-story residence is attached to the north side of the building with an east facing attached garage constructed of off white wood siding.

201 Trejo Trail, Tallassee, Alabama, is a mobile home with off- white vinyl siding and a silver metal roof. This trailer is located to the southeast of the main residence and south of 141, 159 and 171 Trejo Trail.

172 Trejo Trail, Tallassee, Alabama, is a large, charcoal colored, metal- sided building with a blue metal roof. This building, known as "the shop" is located southwest of the main house and is split-level, with an office inside.

Octavio Trejo PATINO, a Lawful Permanent Resident, is described as: a Hispanic male, five foot-nine inches in height, two hundred-sixty pounds, date of birth of August 20, 1973, and the co-owner of all property located at 1468 Hicks Store Road in Tallassee, Alabama. Ronda Sue BAIRD, a United States citizen, is described as: a white female, five foot-four inches in height, one hundred and fifty nine pounds, date of birth of February 2, 1969, and the co-owner of all property located at 1468 Hicks Store Road in Tallassee, Alabama.

The investigation of RAPID DRYWALL SUBCONTRACTORS, INC, a domestic profit corporation established on August 3, 2001, by Ronda BAIRD, in the state of Georgia, has revealed illegal aliens are employed at RAPID DRYWALL SUBCONTRACTORS, INC.    Records indicate that RAPID DRYWALL SUBCONTRACTORS, INC, was administratively dissolved on July 9, 2005, but remains an active company.

Georgia Secretary of State corporate records revealed Octavio Trejo PATINO previously filed for corporate status for Trejo Construction Service, Inc, on February 5, 1999.  Trejo Construction Service, Inc, was administratively dissolved on November 9, 2002.

On May 10, 2005, Noel Crenshaw, in a sworn statement, stated PATINO owns the "Compound" located at 1468 Hicks Store Road in Tallassee, Alabama. The "Compound" is also known as "The Ranch." PATINO employs illegal aliens and taxes their earnings without remitting the money to the proper taxing authority. Crenshaw said some of the illegal aliens obtain false identification documents from PATINO. Crenshaw's former boyfriend, who was an illegal alien employed by PATINO, told her (Crenshaw) this information.

The Office of the Tax Assessor for Tallapoosa County, Alabama, indicated Parcel 62-23-08-33-0-001-025.000 (the subject parcel 25) is a 22.08 acre parcel in Section 33, Township 19 North, Range 22 East, with footage on the south side of Hicks Store Road in Tallassee, Alabama. Ad valorem real property taxes on the subject parcel are assessed in the names of Octavio PATINO and Ronda BAIRD at 1468 Hicks Store Road, Tallassee, Alabama.

The Judge of Probate for Tallapoosa County, Alabama, indicated on September 29, 2000, Octavio Trejo PATINO and Ronda BAIRD purchased the subject parcel described as a 22.08 acre parcel less and except a 3.00 acre parcel for a total of 19.08 acres from grantor Barbara Flurry.

The Judge of Probate for Tallapoosa County, Alabama, indicated on September 29, 2000, mortgagors Octavio Trejo PATINO and Ronda BAIRD signed a mortgage conveying to Evers Mortgage Company in Dadeville, Alabama, a security interest in the subject parcel. The mortgage secured a loan in the amount of $53,395.85. Further analysis of records revealed that on August 9, 2004, Evers Mortgage Company released the mortgage on the property located at 1468 Hicks Store Road, Tallassee, Alabama.

On November 28, 2005, Octavio Trejo PATINO and Ronda Sue BAIRD purchased approximately 15 acres located at 2426 Macedonia Road in Tallassee, Alabama for $235,000. Public records reflect that PATINO and BAIRD financed $204,750 with AmeriQuest Mortgage Company located at Post Office Box 11507 in Santa Ana, California. Compass Bank located at 701 South 32nd Street in Birmingham, Alabama 35233 provided financial institution documents on all accounts associated with PATINO and BAIRD from January 2005 to March 2006.

Compass Bank checking account 87330605 is in the corporate name of RAPID DRYWALL SUBCONTRACTORS, INC, 1468 Hicks Store Road, Tallassee, Alabama. RAPID DRYWALL SUBCONTRACTORS, INC, taxpayer identification number is listed as 58-2641893. Ronda BAIRD opened the account on November 4, 2002. The following is a partial analysis of the financial activity gleaned from RAPID DRYWALL SUBCONTRACTORS' account identified as 87330605:

a.    On January 1, 2005, the account reflected a balance of $415,984.24.

Throughout calendar year 2005 and the first three months in 2006, a total of $4,831,899.61 was deposited into the account. The deposits consisted of corporate checks from various corporations and limited liability companies registered in the state of Alabama. The majority of the deposits, $3,394,137.92 (approximately seventy percent) were from Price Ceiling, Incorporated, located at 1225 Emory Folmar Boulevard in Montgomery, Alabama. Woolard Brothers, Incorporated, located at Post Office Box 210697 in Montgomery, Alabama, paid approximately $731,608.23 (approximately fifteen percent). Four Star Interior Construction, located at 12108 Highway 78 East in Riverside, Alabama, paid approximately $270,198.00 (approximately five and a half percent).

b.    Records reflect from January 2005 to March 2006, account 87330605 revealed an average of approximately 574 withdrawals per month. The majority of the withdrawals were corporate checks written to employees for services rendered. The checks were predominately made payable to individuals with Hispanic names. The majority of the checks noted specific job numbers and specific job sites where the employee had performed services, such as: "Frasier Church," "East Alabama Medical Center," "FEMA," and "Monroe County Jail."

c.    On April 26, 2005, check 18820 payable to Ismael Villa cleared. The endorsement on the back of the check revealed a signature for Ismael Villa and a date of birth of September 19, 1982. Law enforcement databases revealed an Ismael Villa with a date of birth of September 19, 1982 was arrested on May 7, 2004 in Evergreen, Alabama, for administrative

immigration violations and was subsequently deported on July 23, 2004. On January 31, 2005, law enforcement databases revealed Ismael Villa attempted to reenter the United States and was deported to Mexico on February 1, 2005. Records indicate in or about April 2005, a person who appears to be Ismael Villa began performing services for RAPID DRYWALL SUBCONTRACTORS at the following construction sites: Foley, Alabama Theatre; Birmingham Surgical Center; Westwood Church; and other known and unknown locations. Records further show from April 2005 to October 2005, Ismael Villa was paid approximately $5,500 by RAPID DRYWALL SUBCONTRACTORS for services rendered.

d.    On May 2, 2005, check 19113 payable to Nadia Torres cleared. The endorsement on the check was signed "Nadia Torres" and 015-871-006 was written on the front. Law enforcement databases revealed Resident Alien Registration number 015-871-006 is assigned to an individual other than Nadia Torres. Records indicate from April 2005 to February 2006, RAPID DRYWALL SUBCONTRACTORS paid a person identified as Nadia Torres approximately $6,400 for services rendered.

e.    On June 15, 2005, check 1411 payable to Carol Gregory Dodge in the amount of $37,800 cleared. The endorsement on the check was stamped Carol Gregory Dodge of Columbus, Inc. On June 11, 2005, records reflect that BAIRD purchased a 2005 Dodge 3500 pickup from Carol Gregory Dodge of Columbus, GA. Alabama Department of Public Safety records revealed that a 2005 Dodge 3500 pickup, blue in color with Vehicle Identification Number (VIN) 3D7MS48C55G811433, with AL tag 62P1036A was registered to RAPID DRYWALL SUBCONTRACTORS, 1468 Hicks Store Road, Tallassee, Alabama 36078. However, on July 27, 2006, the aforementioned tag was seen on a white Dodge van.f.    On June 21, 2005, check 19995 payable to Rafael Herrera cleared. The endorsement on the check was signed and on the front was "050-431-706". Law enforcement databases revealed Resident Alien registration number 050-431-706 is not assigned. A review of financial institution records

revealed Herrera received checks from RAPID DRYWALL SUBCONTRACTORS from April 2005 to December 2005 totaling approximately $6,700.

g.    On June 24, 2005, check 20205 payable to Rogelio Trejo cleared. The endorsement on the check was signed "Rogelio Trejo" with "22312790" written underneath. The front of the check had Resident Alien number A096783306 as a form of identification when the check was cashed. Law enforcement databases revealed A096783306 is assigned to an individual other than Rogelio Trejo. Records show from April 2005 to October 2005, Rogelio Trejo was paid approximately $20,400 from RAPID DRYWALL SUBCONTRACTORS.

h.    On July 21, 2005, check 20538 payable to Ansstacio Aboytes Cervantes cleared. The check was endorsed and 098-187-577 was written on the front. Law enforcement databases revealed 098-187-577 was assigned to an individual other than Ansstacio Aboytes Cervantes. Records reflect from April 2005 to September 2005, Cervantes was paid approximately $5,000 by RAPID DRYWALL SUBCONTRACTORS for services rendered.

i.    On July 29, 2005, check number 20689 payable to Brenda Vera M. cleared. The endorsement on the check was signed "Brenda Vera M" and "Perm Resident 088-190-069" was written on the front. Law enforcement databases revealed 088-190-069 is not an assigned Resident Alien number. Records show from April 2005 to December 2005, Brenda Vera M. was paid approximately $5,500 for services rendered by RAPID DRYWALL SUBCONTRACTORS.

j.    On February 10, 2006, check number 23416 payable to Florencio Becerra cleared. The endorsement on the check was signed "Florencio Becerra" and resident alien number A091713617 was written on the front as a form of identification. Law enforcement databases revealed A091713617 is assigned to an individual other than Florencio Becerra. Records reflect from April 2005 to February 2006, Becerra was paid approximately $9,700 for services rendered by Rapid Drywall Subcontractors.

k.    A partial review of account 87330605, from April 2005 to December 2005, revealed approximately thirty-seven additional individuals received money for services rendered from RAPID DRYWALL SUBCONTRACTORS, INC. Because fraudulent identification numbers were written on the face of checks made payable to them, it appears false identification documents were utilized to cash the checks. The falsified documents appear mainly to have consisted of Resident Alien Cards and a few state issued driver's licenses whose numbers are either registered to individuals other than the names presented on RAPID DRYWALL SUBCONTRACTOR'S corporate checks or invalid numbers.

Compass Bank account 16107174 is in the name of Chre' Shawntae Houston. The account was opened on June 4, 2004. Ronda BAIRD is listed as the custodian of the account. Deposit activity revealed approximately $19,000 was transferred from RAPID DRYWALL SUBCONTRACTOR'S account identified as 87330605 to this account. Withdrawal activity revealed approximately $16,000 was transferred from account 16107174 back to RAPID DRYWALL SUBCONTRACTOR'S account 87330605.

Compass Bank checking account 22141694 is in the name of Ronda S. BAIRD. The account was opened on September 1, 2004. Ronda BAIRD is the sole person listed on the signature card. A partial review of deposit activity revealed from August 2005 to March 2006, approximately $129,300 was transferred from RAPID DRYWALL SUBCONTRACTOR'S account 87330605 to checking account 22141694. A further review of account 22141694 revealed approximately $29,555 was paid to Cornerstone Lodge in Foley, Alabama. Surveillance of the Cornerstone Lodge in Foley, Alabama, revealed the presence of vehicles registered to Octavio Trejo PATINO and to a Victor Hugo Contreras of 209 Davison Street, Tallassee, Alabama. Hugo Contreras has received numerous checks from RAPID DRYWALL SUBCONTRACTOR account 87330605 for services rendered and has apparently utilized fraudulent Resident Alien Card 098-787-577 to cash those checks. Resident Alien Card 098-787-577 is assigned to a person other than Hugo Contreras.

Compass Bank account 16107166 is in the name of Octavio Trejo Patino, Jr. The account was opened on June 4, 2004. Ronda BAIRD is listed as the custodian of the

account.  Deposit activity from January 2005 to March 2006 revealed approximately $21,200 was transferred from RAPID DRYWALL SUBCONTRACTOR'S account 87330605 to this account.  Withdrawal activity from the same dates revealed approximately $16,000 was transferred from account 16107166 back to RAPID DRYWALL SUBCONTRACTOR'S account 87330605.

Compass Bank account 26555744 is in the name of Octavio Trejo PATINO. The account was opened on September 8, 2005.  Octavio Trejo PATINO and Ronda BAIRD are listed on the signature card.  Deposit activity from January 2005 to March 2006 revealed approximately $3,500 was transferred from RAPID DRYWALL SUBCONTRACTOR account 87330605 to account 26555744.

Compass Bank checking account 28071124 is in the name of Barbara S. Haynes. The account was opened on October 14, 2005.  Barbara S. Haynes and Ronda BAIRD are listed on the signature card.  Deposit activity from October 2005 to March 2006 revealed approximately $89,500 was transferred from RAPID DRYWALL SUBCONTRACTOR'S account 87330605 to checking account 28071124.  A partial review of RAPID DRYWALL SUBCONTRACTOR'S corporate account from April 2005 to February 2006 revealed numerous checks made payable to Barbara S. Haynes, which totaled approximately $125,000.

The Alabama Department of Industrial Relations, Labor Market Information Division, had no records of earned wages for employees or any records for RAPID DRYWALL SUBCONTRACTORS, INC, Octavio Trejo PATINO, Ronda BAIRD or Barbara Haynes.  The Labor Market Information Division collects information regarding employers and the wages and taxes withheld in the state of Alabama for employees.

Western Union, a money transmitter, provided information regarding Octavio Trejo PATINO and Ronda BAIRD.  Approximately eighty-seven (87) wire transfers were conducted from February 2001 to May 2005 that pertain to PATINO and BAIRD.  A review of the wire transfers revealed numerous wire transfers to individuals who utilized fraudulent Resident Alien Cards as forms of identification to receive funds sent by PATINO and BAIRD.  Listed below are examples of two Western Union wire transfers conducted by PATINO:

b.    On July 16, 2004, PATINO wire transferred $2,000 to Rogelio Trejo Patino in Dallas, Texas. RAPID DRYWALL SUBCONTRACTOR'S account 87330605 revealed numerous payments for services rendered to Rogelio Trejo Patino and his use of a fraudulent Resident Alien Card to receive cash back from the RAPID DRYWALL SUBCONTRACTOR'S checks. Law enforcement databases revealed the United States Border Patrol arrested Rogelio Trejo Patino in September 2003 for Title 8 United States Code 1251(a) removal proceedings. Rogelio Trejo Patino is currently listed as a fugitive/self deport and is identified under Alien Registration Number A09643977. On August 3 and 4, 2004, PATINO wire transferred $1,000 each day to Erendira Pizana in Brownsville, Texas. Law enforcement databases revealed an individual believed to be Erendira Pizana's spouse had a prior conviction for alien smuggling.

On July 21, 2006, an undocumented source of information reported he/she had a conversation with a white male known as "Browning". The source of information stated Browning told him/her his daughter, Ronda BAIRD, was on the computer for the last couple of weeks trying to get the checks prepared. RAPID DRYWALL SUBCONTRACTOR'S account 87330605 revealed the majority of checks from the account were typed, appearing to be electronically generated by a computer and signed by Ronda BAIRD.

On August 3, 2006, ABI Corporal Scott Donovan spoke with PATINO at his residence located at 1468 Hicks Store Road, Tallassee, Alabama. Donovan asked PATINO whether the property inhabitants were legal residents or United States citizens. PATINO stated everyone was legal and had the proper documentation.

On August 17, 2006, ABI Corporal Scott Donovan and Tallapoosa County Sheriff's Office Investigator Fred White, with other law enforcement officers and interpreter Jose Garcia, conducted a knock and talk at 1468 Hicks Store Road, Tallassee, Alabama. Officers initially spoke with BAIRD who consented to their presence on the property and also consented to their speaking with individuals residing on the property. Approximately twenty individuals were identified, of which approximately twelve were illegal aliens.

While speaking with the illegal aliens, officers were joined by PATINO and while in the presence of PATINO, the illegal aliens admitted to being in the United States illegally and residing on the property owned by PATINO and BAIRD. PATINO was asked why he had previously lied to Donovan on their August 3, 2006 conversation. PATINO acknowledged lying to Donovan and stated he and others were waiting for President Bush's bill for the workers already in the United States to be approved. PATINO asked Rashonda Baird, BAIRD'S daughter, to retrieve keys from the main residence, 132 Trejo Trail, to unlock the residences occupied by the legal and illegal aliens residing on the property. Rashonda Baird returned with a yellow plastic key ring holding several keys, which appeared to be residential style keys. Donovan asked PATINO if he had keys to all the buildings on the property and PATINO replied in the affirmative. A partial review of RAPID DRYWALL SUBCONTRACTOR'S account 87330605 established payments from RAPID DRYWALL SUBCONTRACTORS to eight of the twelve illegal aliens identified.

Based upon my knowledge, training and experience as a criminal investigator, I know persons engaged in the unlawful harboring and employment of illegal aliens must establish and maintain a means of communication between the employer and employees. This communication may be established and maintained in many ways, to include: traveling from location to location to facilitate illegal employment activities; purchasing or otherwise acquiring the items necessary to fulfill their obligations as the employer for the employees; maintaining records of employees and monies owed; finding a means of payment to maintain the workforce; and establishing residences for employees and their families.

Based upon my knowledge, training and experience, I know that all of the foregoing activities cause those persons engaged in the unlawful harboring and employment of illegal aliens to create and maintain items such as those described below, which I know to be evidence of violations of Federal Law including, but not limited to, Title 8, U.S.C., Section 1324, Bringing In and Harboring Illegal Aliens; Title 8, U.S.C., Section 1324a, Unlawful employment of Aliens and Title 18, U.S.C., Section 981.

Based upon my knowledge, training and experience I know:

a.  Many of the known acts and instances described in this affidavit required cash purchases and/or expenditures as well as payments from checking accounts. Such activities often create a trail of documentation which may include, but is not limited to: identification, photographs, checks, copies of wire transfers, deposit slips, vehicle and/or trailer titles, email messages in printed form, purchase agreements, receipts for gas, motel/hotel receipts, airline tickets, bank account ledgers, checking account records, utility bills, telephone numbers, telephone numbers of associates, telephone numbers of legitimate businesses such as travel agencies and investment brokers, and documents identifying additional co-conspirators involved in the bringing in, harboring and employing of illegal aliens.

b.  Documents are usually maintained for personal reference purposes to facilitate communication between associates and co-conspirators, to document expenses for reimbursement, as mementos and for reference by others should one or more parties be arrested or taken into custody. Documents are not only stored in hard copy form, due to the fact that a majority of documents are stored electronically such as on a personal computer and/or hand held electronic device such as "palm pilots". Computers are utilized to allow access to vital information of an organization and allow the organization to operate efficiently and effectively. Businesses utilize computers to track revenues and expenses associated with the company and allow the owners to print checks to employees more efficiently and effectively, especially with a large workforce.

c.  The items and documents described above are usually maintained by those engaged in harboring and employing illegal aliens just as law abiding businesses and citizens do, in a location where they are readily accessible, most often in a residence, or on properties which the persons engaged in their business activities, feel safe because they or their family members and/or very close associates maintain and control the property.

During my career with ICE, searches of residences, associated with harboring and employing illegal aliens, have yielded documents as described above, papers and/or notes, photographs, personal computers and/or hand held computers utilized to facilitate the employment of illegal aliens, address books, telephone numbers, receipts and the like which have spanned several years prior to the search; particularly when the occupants of the residence or property has resided at the location for a period of time. Those persons who are engaged in a legitimate lifestyle, accumulate said items in their everyday lives and maintain those items in areas where they have control for safekeeping and ready access.

Jonathan Harrison, ICE
Special Agent

Sworn to and subscribed before me this
10th day of October, 2006, at
Montgomery, Alabama

VANZETTA PENN MCPHERSON
United States Magistrate Judge

# *United States District Court*

_____ **MIDDLE** _____ **DISTRICT OF** _____ **ALABAMA** _____

**In the matter of the Search of**
(Name, address or brief description of person,
property or premises to be searched)

**1468 Hicks Store Road, Tallassee, AL**
*See Attached Address/Compound Breakdown and*
*Description*

TO: __ Immigration and Customs Enforcement __

SEARCH WARRANT **RETURNED AND FILED**

**CASE NUMBER:** *2:06mj 115-VPM*

OCT 2 6 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.
and any Authorized Officer of the United States

Affidavit(s) having been made before me by ____ Special Agent Jonathan Harrison ____ who has
                                                    Affiant

reason to believe that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**1468 Hicks Store Road, Tallassee, AL**
*See Attached Address/Compound Breakdown and Description*

in the ____ Middle ____ District of ____ Alabama ____ there is now

concealed a certain person or property, namely (describe the person or property)

**See Attachment A**

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ *13 October 2006* _____
                                                                    Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause
has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and
receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly
return this warrant to _____ as required by law.
                    U. S. Judge or Magistrate Judge

October 10, 2006                        *4:10 pm*    at    Montgomery, Alabama

Date and Time Issued                                        City and State

Vanzetta P. McPherson, U.S. Magistrate Judge

Name and Title of Judicial Officer                          Signature of Judicial Officer



GOVERNMENT
EXHIBIT
5

FILED

# *United States District Court*

OCT 1 2 2006

_____ **MIDDLE** _____ DISTRICT OF _____ **ALABAMA** _____

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

v.

**CASE NUMBER:** 3:06MJ100-VPM

**RAMON CONTRERAS RODRIGUEZ**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of

my knowledge and belief. On or about __October 12, 2006__ , in __Tallapoosa__ county and elsewhere within

the ____ Middle ____ District of ____ Alabama ____ defendant(s) did, (Track Statutory Language of Offense)

possess in and affecting commerce, a firearm, while being an alien illegally and unlawfully in the
United States,

in violation of Title __18__ United States Code, Section(s) __922(g)(5)(A)__ I further state that I am a(n)

Immigration & Customs Enforcement, Special Agent __ and that this complaint is based on the following facts:
. Official Title

SEE THE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:   ⊠ Yes   ☐ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

October 12, 2006                                              at   Montgomery, Alabama

Date                                                              City and State

Susan Russ Walker, U.S. Magistrate Judge

Name and Title of Judicial Officer                           Signature of Judicial Officer

GOVERNMENT
EXHIBIT
6

## AFFIDAVIT

I, Jonathan E. Harrison, being duly sworn, hereby depose and state the following:

I am a Special Agent employed by the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE) and have been so employed since its inception in March 2003. Prior to March 2003, I was a Special Agent for the Department of Treasury, United States Customs Service for approximately two (2) years. My duties include the investigation of the proceeds of illegal activities, specifically money laundering violations of Title 18 United States Code 1956 and 1957 as well as violations of Title 8, the Immigration and Nationality Act. The following information has been obtained by me personally or has been provided to me by agents and investigators of ICE and other law enforcement agencies, specifically, Corporal Scott Donovan of the Alabama Bureau of Investigations (ABI) and Investigator Fred White of the Tallapoosa County Sheriff's Office.

1468 Hicks Store Road, Tallassee, Alabama is located off Macedonia Road in the county of Tallapoosa in the State of Alabama. The property consists of six residential houses, one of which is divided into apartments. The main residence is a two story residential property constructed of red brick with a green metal roof and is located south of Hicks Store Road. The main entrance of the residence is in the southwest corner of the residence. Due to numerous residences located on the property, the residences have different numerical and street addresses other than 1468 Hicks Store Road.

The investigation of RAPID DRYWALL SUBCONTRACTORS, INC, a domestic profit corporation established on August 3, 2001, by Ronda BAIRD, in the state of Georgia, has revealed illegal aliens are employed at RAPID DRYWALL SUBCONTRACTORS, INC. Records indicate that RAPID DRYWALL SUBCONTRACTORS, INC., was administratively dissolved on July 9, 2005, but remains an active company.

On July 21, 2006, an undocumented source of information reported he/she had a conversation with a white male known as "Browning". The source of information stated Browning told him/her his daughter, Ronda BAIRD, was on the computer for the last couple of weeks trying to get the checks prepared. RAPID DRYWALL SUBCONTRACTOR'S account 87330605 revealed the majority of checks from the

1



account were typed, appearing to be electronically generated by a computer and signed by Ronda BAIRD.

On August 3, 2006, ABI Corporal Scott Donovan spoke with PATINO at his residence located at 1468 Hicks Store Road, Tallassee, Alabama. Donovan asked PATINO whether the property inhabitants were legal residents or United States citizens. PATINO stated everyone was legal and had the proper documentation.

On August 17, 2006, ABI Corporal Scott Donovan and Tallapoosa County Sheriff's Office Investigator Fred White, with other law enforcement officers and interpreter Jose Garcia, conducted a knock and talk at 1468 Hicks Store Road, Tallassee, Alabama. Officers initially spoke with BAIRD who consented to their presence on the property and also consented to their speaking with individuals residing on the property. Approximately twenty individuals were identified, of which approximately twelve were illegal aliens. While speaking with the illegal aliens, officers were joined by PATINO and while in the presence of PATINO, the illegal aliens admitted to being in the United States illegally and residing on the property owned by PATINO and BAIRD. PATINO was asked why he had previously lied to Donovan on their August 3, 2006 conversation. PATINO acknowledged lying to Donovan and stated he and others were waiting for President Bush's bill for the workers already in the United States to be approved. PATINO asked Rashonda Baird, BAIRD'S daughter, to retrieve keys from the main residence, 132 Trejo Trail, to unlock the residences occupied by the legal and illegal aliens residing on the property. Rashonda Baird returned with a yellow plastic key ring holding several keys, which appeared to be residential style keys. Donovan asked PATINO if he had keys to all the buildings on the property and PATINO replied in the affirmative. A partial review of RAPID DRYWALL SUBCONTRACTOR'S account 87330605 established payments from RAPID DRYWALL SUBCONTRACTORS to eight of the twelve illegal aliens identified.

On October 12, 2006, the United States ICE, the Alabama Bureau of Investigations and Tallapoosa County Sheriff's Office executed a federal search warrant, which had been obtained on October 10, 2006, at 1468 Hicks Store Road in

Tallassee, Alabama.   Approximately twenty-three illegal aliens residing on the property were processed for deportation.

During the search of 201 Trejo Trail, agents found two handguns and a rifle inside the residence.  The two handguns were described as a Ruby Extra .38 caliber with a serial number of 532526 and a Ross .38 caliber with a serial number of UL56250.  The Ross .38 caliber was listed, on the frame, as being made in Brazil.  The rifle was described as a Stevens Model 62 .22 caliber with a serial number of 0508913.  The rifle also had a Tasco 3 x 9 scope.  The search of this residence further revealed it was occupied by Ramon Contreras Rodriguez, also known as Ricardo Mendoza Lira, and Nadia Torres, both illegal aliens.  The two handguns were located in a box in the master bedroom of 201 Trejo Trail along with corporate checks from RAPID DRYWALL SUBCONTRACTORS made payable to Ramon Contreras Rodriguez and Nadia Torres.

The Alcohol, Tobacco, Firearms, and Explosives (ATF) confirmed that the Ross .38 caliber and the Stevens Model 62 .22 caliber rifle were not manufactured in the state of Alabama.

Jonathan Harrison, ICE
Special Agent

Sworn to and subscribed before me this
12th day of October, 2006, at
Montgomery, Alabama

SUSAN RUSS WALKER
United States Magistrate Judge